Oral argument is under a state of rambling. Excuse me. Okay, counsel. Whenever you're ready. Thank you. Good morning members of court and Attorney Tracy. My name is Robert Forbes. I represent the estate of Nancy Randall, and we're asking this court to reverse the order of the trial court that was entered on November 18th, 2010. I represent the estate of Nancy Randall, as I've indicated, and the estate really doesn't have any assets because of the fact that some five weeks prior to Nancy Randall's death, Nancy Randall had $500,000 in life insurance, more than $500,000 in life insurance proceeds, which should have gone to the estate and then to her three children, was diverted by means of a transaction which was approved by the court and ended up transferring the money to Gwen Ryan, who is the deceased sister. The trial court permitted this, even though there was a fiduciary relationship between Gwen Ryan and Nancy Randall at the time of the transfer, by ignoring LMI law, which should have applied presumption of fraud to that transaction, that transfer, and subjected it to a different burden of proof than the court actually applied. Now, by way of background, Nancy Randall passed away on August 28th of 2009. She was 62 years old. She had three children from her 40-year marriage to her husband, Dwayne. Dwayne had passed away earlier that year from pancreatic cancer. He passed away on June 9th of 2009. When Dwayne became ill, Nancy executed a power of attorney, appointing her eldest daughter, Jennifer, as her power of attorney, because Nancy had not typically handled the banking and other financial matters for the family. After Dwayne passed away in June of 2009, Nancy Randall's sister, Gwen Ryan, came up from Memphis. She's a real estate agent in Memphis, Tennessee. The evidence was that she was undergoing some financial hardship at this time. She came up to the funeral. She took Nancy Randall with her back to Memphis, where she stayed with Dwayne for the following week and a half or so. There was testimony. I won't belabor the testimony, but there was testimony that Nancy Randall was suffering from some health problems and mental health-related problems during this period of time that affected her judgment and exacerbated the difficulties that she was having and the grief process from the loss of her husband. In any event, during the period of time that she was staying with her sister, Gwen Ryan, she called a close friend and said, we, meaning her and Gwen Ryan, had decided to change the power of attorney and to name Gwen Ryan the power of attorney in place of Jennifer. The stated reason that she gave her this was because of her understanding that there were rumors being spread about her by her daughter. These events took place while she was staying with her sister, Gwen Ryan, in Memphis, Tennessee. All of these facts were disputed by the other witnesses who claimed that they were not based in any reasonable understanding or any reality of the circumstances that actually existed. The point is that while she was staying with Gwen Ryan, a decision was made with Gwen Ryan to appoint Gwen Ryan as the power of attorney. Thereafter, Gwen Ryan called an attorney in Alton for Nancy Randall to prepare the power of attorney, spoke to this attorney before Nancy Randall spoke to her, arranged the appointment, and when Nancy Randall returned to the area of her home, she met with the attorney who had been selected by Gwen Ryan and executed a power of attorney naming Gwen Ryan. This was on June 26th of 2009. Nancy Randall understood that she was to receive $500,000 in life insurance from the death of her husband, Dwayne, who had purchased this life insurance during his lifetime. Gwen Ryan was also aware of this. She testified that she was familiar with Nancy Randall's life insurance situation. She discussed it with her frequently and that she was not only aware of the fact that the life insurance was to be paid but also assisted Nancy in the communications to the insurance company, the correspondents, the phone calls that were necessary to process the claim. So this was not something she was unaware of. She also testified that even though she and Nancy had frequent conversations about the life insurance, that Nancy Randall never expressed to her any intention that she intended to leave any of that money to Gwen Ryan. The life insurance proceeds were paid to Nancy Randall in late July, I believe, of 2009, some five weeks before Nancy Randall passed away. When Nancy Randall received the check for the life insurance, she called the bank and told her banker that she wanted to, quote, park the money until she decided what to do with it. The banker's testimony was to the effect that she really expressed a lack of understanding as to the nature of various bank accounts because she called him back an hour later and said, well, this joint account that I've asked for, does that mean that Gwen Ryan can access the money? When the banker told her no or yes, then she called back again later and said, well, I'm going to change that then. So what triggered her decision to change the account was the understanding that Gwen Ryan would even be able to get to any of that money. So she goes to the bank. The banker said that she never expressed to him any intention of leaving this money to Gwen Ryan and that she wanted to park it temporarily until she decided what to do. And when she leaves that day, she has a POD account, payable on death account. Now, how you end up with a payable on death account when you're discussing it with a banker and the banker indicates that you never told him you wanted to leave the money to the designated person on the POD account and indicates that your stated purpose for the account is simply to park the money is another matter. Did the banker testify that he explained to her the difference in the accounts? No, he did not. As a matter of fact, he testified that he did not. She simply expressed that the only difference in the accounts that he explained to her was that a POD account meant that Gwen Ryan could not access the money immediately. But he said she never expressed to him that… He explained to her what a joint checking account is, but he didn't explain to her what a POD account was. He really didn't express to her the specifics of either account. What he testified to was she called him and asked for a joint account. And the only thing that he indicated she stated was that she first spoke to him. She said she wanted to deposit the money in a joint account with Gwen Ryan. That's on page 49 of the record. She then called back an hour or two later and asked, what did it mean to have a joint account? Bar 3849. She specifically wanted to know if Gwen Ryan would be able to access the funds in the account. And when he told her that it would, she then instructed him to deposit the money in a POD account. He testified he did not advise Ms. Randall as to the effect of putting her money in a POD account. That's on page 38, bar 38 of the record. He testified he assumed she must have spoken to someone in the one or two hour period between the two phone calls. But she specifically asked for a POD account? Yes. And had no clear understanding as to what apparently that meant, other than it meant Gwen Ryan couldn't obtain the money. How do we know she didn't understand? Because of the testimony of Mr. Keller, which he indicates that just by virtue of the question she's asked suggests to him that she doesn't have a clear understanding of what the accounts mean because she asked for a joint account. So by inference. Right. Okay. But this case doesn't rise or fall on whether or not she understood what a POD account was. This case rises or falls on whether the presumption of fraud that applies to transfers between fiduciaries applies to a transfer into a POD account. That's the issue here. It's not simply that we had two individuals that are operating outside a fiduciary relationship, and the question is did she intend to open a POD account? Was the power of attorney in any way used to create the POD account? No. And as Justice Goldhurst is aware from writing the opinion in the Miller case, that is not something that makes a difference under Illinois law. Under Illinois law, the presumption of fraud applies whether or not the power is used to create the account or to make the transfer. The intention of Illinois law and law of every state in the country, as far as I can tell, is to protect individuals from abuse by fiduciaries. And again, what I think the court here failed to recognize is the fact that a presumption of fraud arises with respect to a transfer does not mean that transfer can't take place. It simply means it's subject to some additional scrutiny so that we can be satisfied that this was on the up and up, that this was fair and reasonable, there was consideration that the person who was making the transfer was fully aware of the circumstances, had consulted with someone about the nature of the transfer and the effect of the transfer. It just subjects it to additional protection and scrutiny. Under the court's order that was entered in this case, if you appoint me, if my grandmother appoints me power of attorney, and I use that power to take everything that she owns and transfer it into a joint account with me, that's subject to a presumption of fraud or undue influence. If, however, I use that power to transfer everything she owns into a POD account, that's completely different. I can do that. It's not subject to any additional scrutiny. It's not subject to any presumption of undue influence. That makes no sense at all. And that's what the order here suggests and indicates. And that's the argument of the appellee in this case is that for some reason, which is unsupported by any case law that I'm aware of, a transfer into a POD account between fiduciaries should be treated entirely differently than a transfer into a joint account. And that is not what the law says. But really what is particularly troubling is that the post-trial motion, we received the order which the court said that this transfer was appropriate and that the presumption of undue influence as applied to fiduciaries typically did not apply to this case because it was a POD account. At the post-trial hearing, when the court explained the reason it entered the order, it expressed something completely different. It said that the appellate court, this is the trial court's language, the appellate court has done a magnificent job of overstating many of the general provisions such that they create a conflict that should otherwise not exist in Illinois law. There are cases I can find out there that say that it is presumptively fraudulent any transaction that occurs during a fiduciary relationship. True. The next step is a line of cases that say that simply being designated as a power of attorney, not using the power of attorney, but being designated creates a fiduciary relationship. That's also true. And a third set of cases that marries them together says merely being designated as a power of attorney makes a gift from the principal to the agent presumably fraudulent. That's true. That is not a conflict. That is an accurate statement of the law of Illinois. How does that suggest a conflict, an ambiguity, an uncertainty that causes this judge to disregard the presumption of fraud is something that I can't quite understand. And then the court goes on to discuss how it's concerned about giving the gifts to his children who are adults who have also been designated powers of attorney, and then those being presumed fraudulent. Well, it's ironic in that the court is discussing a flashback. What page of the appendix are you on? I'm reading from the transcript. Oh, I apologize. Go ahead then. Go ahead. Of the post-trial motion, page 8. It's referenced in my brief. That's OK. Go ahead. So then the court expresses concern about a fact situation, which is not an issue here. It says what if I'm an adult and I leave the property of my children and I have a problem with the presumption of fraud arising? Well, first of all, those aren't the facts here. But it's ironic that the court is concerned about an inability to leave money to children, and in response to that concern, prevents Nancy Randall from leaving her money to her children. It does exactly the opposite of what it expresses its concern to be. But secondly, this is not an academic exercise. These are real people with a legitimate issue that are based on a specific set of facts. And the facts are here there was a fiduciary relationship between Gwen Ryan and Nancy Randall, which was created under the circumstances that I just described, which was less than perhaps typical. And under Illinois law, that gives rise to a certain presumption, which the court refused to apply because of concern about what it described as ambiguity in these cases. Again, the court never said that it was its position that the presumption of fraud did not apply to POD accounts. In fact, it said that – I pointed out to the court that none of this reasoning that you're expressing is in this order, Judge. And he said, well, I'm not suggesting it is. I'm letting Ms. Tracy choose the way she wants to write the appeal. He signed an order that Attorney Tracy had prepared. And he says on the record, it's not my ruling really or how I would have decided this case, but this is the way I'm going to let her handle the appeal because I want there to be an appeal. I want my concerns to be addressed. This is what he's expressing in his post-trial motion. In any event, I guess what I addressed is his order and not what he expresses his position is. And the order that he entered that was prepared by Ms. Tracy says that a POD account is not subject to the same presumption of fraud that a joint account is, and that simply is inaccurate. A presumption of undue influence arises in transfers between parties to a fiduciary relationship, quote, whether the transfer went by will substitute or a donated transfer of any other type. This is a restatement third of property. This is Illinois law in the Ribo case, in the Elias case. There's no case law that's provided, referenced, cited by the appellee in Illinois or any other state which suggests that a POD account should be treated any differently than any other transfer. And common sense would tell you that for the very reasons I've described, but that's the case. And all you have to do is transfer. If you want to take funds from someone you are in a fiduciary relationship with, all you have to do is put it in a POD account. The fact that a POD account is a will substitute does not affect the application of the presumption of fraud. And I've yet to see any authority submitted by the appellee which suggests that. What the appellee does instead is to say, well, a POD account is a will substitute. All laws applicable to wills apply to both substitutes. Therefore, the result is the undue influence presumption doesn't apply. Well, that's not accurate. All the laws that apply to wills don't apply to will substitutes. If they did, there wouldn't be will substitutes. It wouldn't be legal. They're an exception from the rules that apply to wills. What the law says is that in construing will substitutes, you use the same approach that you do with respect to wills. And the cases which have discussed this distinction have applied the very presumption which the court refused to apply and have discussed why you wouldn't make that distinction with regard to POD accounts. And I'm referring specifically to the Desjardins case. That's another interesting case in that the appellee in her brief says that in support of her reasoning says, well, if Mr. Forbes is correct and this presumption of undue influence applies to will substitutes, then it would apply to life insurance beneficiary designation. And the authority cited is, quote, we know that is not the case. That's the authority. Well, the Desjardins case was a life insurance beneficiary designation. And they did apply the presumption of undue influence that the court refused to apply. So the very reasoning that the appellee presents in support of her argument, unscinded by authority, is refuted by the actual legal authority of the state of Illinois. The court here, for some reason, had a problem with the existing law of presumption of undue influence. It describes scenarios in which a person designates a child as a power of attorney and then there's a presumption of undue influence as to monies that are transferred to that child. Well, that's not the case here. And that presumption is easily overcome. All you have to do, and all that had to be done here, was there be some indication that Nancy Randall was fully apprised of the circumstances that she told, like in the Wrightville case, appeal the account. The presumption was applied, but it was overcome because there was testimony. We sat down with this lady. We explained to her everything that she was doing. She fully understood what she was doing. She expressed why she wanted to do it. And this is why it was upheld by the appellate court. That's not the case here. The court didn't even apply it. And there was no effort on the part of the appellee, on behalf of Gwen Ryan, to refute the presumption. The order that was entered, I mean, it may as well, if that was the case, it should never have even gone to a verdict. It should have been summary judgment because the order describes how I had failed to present proof in support of a cause of action which I didn't even allege. It says I didn't show lack of testamentary capacity. Well, I didn't plead lack of testamentary capacity. This is not a will. Every case cited by the appellee involves a will. There's not a single case that is relevant to the matter at issue here. The second point on appeal is the fact that in this order prepared by Ms. Tracy, she ordered herself attorney's fees out of the estate. This is an action. I was appointed to bring this action on behalf of the estate against a private individual. This is not an action against the administrator of the estate. This is an action brought by the administrator of the estate against Gwen Ryan in an individual capacity. And what Gwen Ryan does is she plays fast and loose with this tile and keeps referring to herself as administrator or executor, whatever the term is that she uses, and claims that the court can award attorney's fees to the executor in, quote, defending the testator's intent. No, that's not what happened here. There is no legal basis to award attorney's fees to a private individual in an unsuccessful attempt by an estate to recover property that belongs to the estate. There's no legal basis to do that. It means that every time an estate is unsuccessful in a citation action, the private individual party who's trying to withhold property of the estate can recover attorney's fees when Illinois law says otherwise. And I think that it was part of this wish list that was made up in this order that was prepared by Ms. Tracy. She really overreached when she included her attorney's fees in this award. And why the court signed off on that is, again, something that I believe is not supported at all by Illinois law. So, again, this is a simple, straightforward issue. We have a presumption of individuals. How much were the attorney's fees? They're not in the order. No, there's been an actual hearing where they've been submitted and approved. So there's not a pay provided for the amount of the attorney's fees but never determined how much they were? Yes, Your Honor. Okay. I know there have been some interim attorney's fees paid in relation. When the court appointed me to represent the estate, it, for whatever reason, didn't remove Ms. Ryan's executor. I alleged a conflict of interest that she should be removed. The court said, no, we'll let you handle this. You can continue on with the administration of the estate. So it's sort of unresolved as to which fees are for which status. Thank you. Thank you, Counsel. Counsel? Good morning, Your Honors. Counsel. May it please the Court, I'm Julie Tracy and I represent the Appalachian Glen Ryan. In this case, Gwen is Nancy Randall's sister, her named executor, and the beneficiary of her payable-in-debt account. Gwen is asking this Court to affirm the trial court's ruling in all respects. Specifically, the order that awarded the POD account to Gwen is the named beneficiary and the part of the order that ordered Gwen's attorney's fees incurred in defending the POD designation to be paid by the estate. With regard to the POD account, throughout this case, appellants have suggested that a POD account is the same thing as a joint account. And the cases that they've cited throughout the briefs at the trial court level and in their appellate briefs have referred to cases discussing joint accounts. A POD account is not the same as a joint account. That's been clear since at least 1967 when Gubala said that a POD account is a testamentary disposition similar to a bequest, whereas a joint account is a lifetime or inter vivos gift in which the holder of the account cedes control to the other joint tenant. And so that joint tenant can go in any time and clear out the account if they want. The POD account, on the other hand, because it's a bequest, the named beneficiary doesn't have any interest whatsoever in the account until and unless there's any money left in that account when the holder dies. With regard to either a POD or a joint account, a presumption of fraud or more specifically undue influence can arise, but more protection is given to bequests, to POD accounts, and therefore they're more likely to be upheld because of the strong public policy in favor of testamentary freedom, and that's the Desjardins and Feinberg cases. With regard to the POD account here, there are two presumptions at issue, but they don't cancel each other out. They're not simultaneous presumptions. They're sequential presumptions. The first is a threshold presumption that did arise in this case, and the second is a presumption that did not arise in this case. The threshold presumption is the presumption of testamentary intent that arose when Nancy created the POD account in compliance with Illinois statute. When she named Gwen as the beneficiary of that account, we can presume by the written document that she intended Gwen to receive whatever was in that account, if anything, when Nancy died. That testamentary intent presumption is rebuttable, but the burden is on the contestants to rebut it by clear and convincing evidence, and that's the Wieland case. You can rebut the presumption of testamentary intent with either a will or a will substitute by either showing that the testator lacked the capacity to form that intent or that her intent was overborne by the influence of another, in this case Gwen. With regard to capacity, appellants have tried to paint Nancy Randall as someone whose judgment was impaired by alcohol and by anxiety, but eventually they conceded in closing briefs, and again today, and the court expressly found that Nancy Randall had testamentary capacity. Not only that, the court said at the post-trial hearing that she did not lack capacity. She was competent for any purpose, not just the relatively low bar of testamentary capacity. Once testamentary capacity was not an issue anymore, that left the appellants with only one way to rebut the testamentary intent presumption that arose from the POD designation form, and that was that they had to prove by clear and convincing evidence that Gwen exerted undue influence over Nancy, and this is where the second presumption in this case comes into play. It's the one that did not arise. There was no actual evidence, the court found, that would lead it to a reasonable inference that Gwen had coerced Nancy, so instead the appellants had to rely solely on a presumption of undue influence that can sometimes arise in fiduciary relationships. They claimed that a fiduciary relationship alone is enough to raise the presumption of undue influence, and that it then became Gwen's burden to disprove that or to rebut that presumption, but they're mistaken about that. Yes, Gwen was Nancy's agent under a power of attorney at the time that Nancy created the account, but Gwen never acted under that power of attorney. She never did anything on Nancy's behalf at all, much less with regard to the creation of the POD account. She never even knew that that account existed until after Nancy died. Illinois law is clear that a fiduciary relationship alone is not enough to raise the presumption of undue influence when dealing with wills and will substitutes, and again, that's because bequests are entitled to a greater level of protection. That's the Anthony case, a Supreme Court case from, I believe, 1950, and Desjardins, and it's as recently as the Elias case that came down this year from the First Circuit. Besides the fiduciary relationship when we're dealing with a will or will substitute, three more things are required. You need to have a trust that the principal trusted the agent, and here we can see that Nancy trusted Gwen, but you also need a dependent and kind of subservient relationship that the principal depends on the agent. Usually you're dealing with either mentally or physically infirm people who may depend on a child or a relative to assist them with day-to-day living tasks and things like that. In this case, there was no dependence. Nancy was not physically or mentally or financially dependent on Gwen. In fact, Nancy had her own independent life in Alton, Illinois, and Gwen has lived for 30 years in Memphis, Tennessee, so she couldn't be dependent on her. But the fourth requirement in addition to the fiduciary relationship is that Gwen must have actively participated in creating or procuring the POD account for her own benefit, which she most assuredly did not. As the Supreme Court said in Redmond v. Steele, there was no act, word, or deed in this case that would even tend to suggest that Gwen actively procured the account. We had testimony from the bank president who said that he spoke to Nancy and only to Nancy regarding the account and that Nancy instructed him to make a POD to Gwen. He never spoke to Gwen about any of Nancy's accounts, never met her, never spoke to her until after Nancy died. Gwen testified, and it was unrebutted, that she did not ask Nancy to set up the account, that she didn't even know about it until after Nancy died. That's the record at 527. Even the appellants, each, when they testified, admitted that they had no evidence that Gwen influenced Nancy to set up the account. They had no evidence whatsoever. That's the record at 446-47 and 468-69. Amazingly, in their closing brief, they claimed that they weren't even alleging undue influence, although that was the only leg that they had to stand on to rebut the testamentary intent presumption. The court, in its order, expressly found that they had produced no evidence at all of undue influence by Gwen. Since all four of the factors, the fiduciary relationship, trust, dependence, and active participation in procurement of the account, have to exist in order for the presumption of undue influence to arise with regard to a will or a will substitute, and two of those factors were missing in this case, the presumption could not arise. And that's exactly what the court below found. There's a good reason that Illinois courts have rejected the appellant's theory that a fiduciary relationship alone is enough to raise the presumption of undue influence. And that's because many, if not most, bequest would then become presumptively invalid. Because, after all, I think it's common knowledge that people routinely give a trusted person, whether that's a spouse, a child, a sibling, a close friend, their power of attorney to act for them in case they can't act for themselves. They routinely name the same loved ones as beneficiaries of their will, their trust, their life insurance policies, and their POD accounts. So, in some cases, the agent under the power of attorney may use that power. In rarer cases, the agent may use that power to benefit themselves. But in a lot of cases, the agent never uses the power at all, because the principal continues to be able to act for themselves. But under appellant's view, just the fact that you had a power of attorney executed, whether or not it had ever been used, and whether or not it had ever been used for the agent's benefit, all of those designations would be presumptively invalid, and the courts would be buried in a will contest. Since the presumption of testamentary intent in this case that arose when Nancy created the POD account in compliance with Illinois law was not rebutted by clear and convincing evidence, or, in fact, by any evidence whatsoever, the trial court properly ruled that that POD designation was valid and that the account passed to Nancy to win by operation of law on Nancy's death. That ruling was not against the manifest weight of the evidence. With regard to fees, the trial court ordered the estate to pay attorney's fees that Gwen incurred in defending the POD beneficiary designation, the will substitute. Appellants had claimed in their briefs that no attorney's fees were requested, so they cannot be afforded. But in fact, the record shows that Gwen requested attorney's fees three different times in the pleadings, and each time she asked that the fees be charged against the appellant's share of the estate, rather the entire estate, because the appellants have a brother, Joe, who never joined in their contest of the POD designation form, and she thought Nancy would think that it was unfair for Joe to bear the cost of appellant's actions. But the court didn't do that. It didn't just sign off on the order presented by counsel without independent thought. It thoroughly considered the issue, and then it ruled that the cost of defending the will substitute, just like the cost of defending a will, should be borne by the estate as a general cost of administration. It specifically said in the post-trial hearing that it did not order the fees payable against Jen and Liz's share of the estate because it wasn't doing it as a sanction. It was purely a cost of administration. And that is certainly within the trial court's sound discretion in this case and is also supported by statute. The Probate Act, Sections 18.10 and 27.2, provide for payment of the administration expenses, including the executor's attorney fees, as a first priority claim against the estate, which is what the trial court ruled in its order. The fee award is also supported by Illinois case law, which was developed over the last century, starting with Pingree v. Jones in 1875, which said that it would be a monstrous injustice for an executor to have to bear the cost of defending a will or will substitute because they're obligated by law to do it. They have no discretion in whether to defend that will or not. And that case law continues even through this year's Elias, when the court assessed fees of a POD contest against the unsuccessful party. And that's exactly what the trial court here did. Well, she was protecting a transfer that occurred outside the will or outside the estate. Right. She was another will substitute, just like in Handelsman they were dealing with a revocable trust, and in Feinberg they were dealing with the validity of a trust provision and the executor's fees were paid by the estate because the court said that they had an obligation to defend their parents' estate plans in Feinberg, and their estate plans included their trust as well as their will. I wanted to point out a couple of things that I wanted to respond to. The attorney for the appellants made several statements about the estate does not have any assets. That's not true. The probate estate, according to the inventory that was filed early on, which actually turned out to be a very good estimate of what was the estate overall, the probate estate is $900,000 approximately. He said that the bank president testified that Nancy didn't really have any understanding of what the difference was between a POD account and a joint account. In my brief, I've cited the portion of the record where the bank president specifically said that she did understand that a joint account meant that Gwen would have immediate access to the account, whereas a POD account meant that she would not get anything until she died. I also want to point out that the appellants have used the word transfer, transfer, transfer over and over again today, as well as in their briefs. I think I counted over 70 times in their appellate briefs where they used the word transfer. A transfer is not what we have here. We have a testamentary disposition, a bequest. A transfer is when someone cedes control of an asset, according to Black's Law Dictionary. That didn't happen here. That happens with a joint account, but it doesn't happen with a POD account. We had no transfer to Gwen during Nancy's lifetime. All we had was a bequest that she get whatever money was in the account when Nancy died. And I believe that's all I have, so if the court doesn't have any questions. I don't believe so. Thank you. Counsel? You know, what troubles me is that the appellate, what few cases are referenced, involve wills, and that the appellate just throws in at-will substitutes as though that has something to do with the case and that the holding has something to do with those substitutes. That's not the case. The Desjardins case rejected the very argument made here, that this laxer, that standards should apply to will substitutes. Yeah, that the laxer standard should apply to will substitutes. It said that the laxer standard only applies to wills because there's greater protection for wills. They're witness signatures. You don't have, with respect to will substitutes, what happened here, where someone walks in a bank, says they won't leave money there temporarily, and there's no witnesses to the event, and then they walk out and they have a POD account. You don't have that with a will substitute. That's why the undue influence standard that applies to any type of account applies to will substitutes. And that's what the court expressly described in the Desjardins case. And the appellee's attorneys, to stand here and reference over and over again wills or will substitutes and then reference actions only involving wills, in which the question is whether or not the execution of the will was made under undue influence, I think portrays the inaccuracy of the court ruling here. The reference by the appellee's attorney that the fact that Ms. Ryan didn't use the power to effectuate the transfer, again, is contrary to all my law, both in T.O. and the Miller case. They discuss that very issue. It doesn't matter. All it means is you come in here and explain to us how this happened, and then if we are satisfied, that's fine. But the undue influence presumption doesn't vitiate the event. It's just a burden of proof that applies to the person who just got $500,000, which she herself can't even explain. When she first was asked why she took the money out of the account, Mr. Ryan said it's to protect the estate from creditors, which indicates that she didn't even believe the money was hers. She somehow was trying to protect the estate creditors from getting money which she understood was the estate. So all it means is that there's this level of scrutiny which the Illinois courts and the courts of every state apply to transfers, and a transfer is a POD account. It's a transfer of benefit to a fiduciary, a person in a fiduciary relationship. It's in the restatement. It's in the cases referenced. It's in the rival case. It's in the Elias case. There's not one case that I've seen referenced by the Apple League which suggests that the presumption of undue influence within a fiduciary relationship does not apply to transfers to POD accounts. And if that were the case, this will substitute is not a term which transforms an instrument into a will. As I said in my brief, a joint account is a will substitute. A trust is a will substitute. And clearly the courts have said that the undue influence presumption applies to those, but for some reason the Apple League believes that this will substitute creates a different instrument with respect to POD accounts, and that's not the case. The executor speaks again. We're not awarded to the executor. They were awarded to a private individual who's trying to keep money out of the estate, and that is not any basis under Illinois law to award attorney's fees. So, again, the characterization of Ms. Ryan as an executor in that particular scenario is inaccurate. So, again, I would ask the court to simply look at the cases, which clearly support, in my view, the position of the appellate and to reverse the trial court and just let this money go to who they wanted it to go to, which is to their children. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We will take this case under advisement for review in the short process.